UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| IN RE: | }<br>} |
| JAMES A. JOHNSON, | }<br>} Case No. 08-41177-JJR-13 |
| Debtor | }<br>}<br>} |
| JAMES A. JOHNSON, | }<br>} |
| Plaintiff, | } |
| v. | } Adversary Proceeding No. 08-40071-JJR |
| PEOPLES INDEPENDENT BANK, N.A., | }<br>} |
| Defendant. | } |

## MEMORANDUM OPINION

On August 15, 2008, the debtor-plaintiff, James A. Johnson ("Johnson") filed an Adversary Complaint (AP Doc. 1 and herein, the "Complaint")[1] against creditor-defendant, Peoples Independent Bank, N.A. (the "Bank") for alleged violations of the disclosure requirements of the Truth in Lending Act (15 U.S.C. § 1601 *et seq,* and herein, "TILA") and Regulation Z promulgated by the Board of Governors of the Federal Reserve System to implement TILA (12 C.F.R. § 226.1 *et seq,* and herein, "Reg. Z"). The Bank filed a Motion to Dismiss (AP Doc. 3 and herein, the "Motion to Dismiss") pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure[2] alleging the TILA claims are barred by the statute of limitations. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended,

---

[1] Pleadings and other documents filed in this adversary proceeding and the underlying bankruptcy case are identified as "AP Doc.__" and "BK Doc. ___," respectively.

[2] All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

entered by the United States District Court for the Northern District of Alabama. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter a final order. For the reasons stated below, the Court is granting the Defendant's Motion.

In compliance with Rule 7052(a), the following shall constitute the Court's findings of facts and conclusions of law.

FINDINGS OF FACTS:

*Real Estate Loan*

On August 27, 2003, the Bank made a loan to Johnson in the principal amount of $15,738.00 (the "Loan") secured by a mortgage on a house and lot in Calhoun County, Alabama. The Loan proceeds were used to purchase the house and lot, which became Johnson's principal residence.[3] The Loan was evidenced by a four-page Note, Disclosure, and Security Agreement (the "Note").[4] Exhibit A attached to the Note is a description of the mortgaged property. The Note and Exhibit A were signed by Johnson, and he initialed each page of the Note.

*Chapter 13 Petition*

On June 11, 2008, Johnson filed a petition for relief pursuant to chapter 13 of the Bankruptcy

---

[3] See the Complaint, exhibits to Complaint, and Johnson's bankruptcy schedules included in BK Doc. 1.

[4] Copies of the Note were attached to Johnson's Complaint and to Claim #11 filed by the Bank.

2

Code[5] together with a proposed chapter 13 plan and required schedules.[6] In Schedule A – Real Property, Johnson reported he owned a "house & lot" valued at $19,540.00 subject to a secured claim of $10,700.00. In Schedule D – Creditors Holding Secured Claims, Johnson listed the Bank as holding a claim in the amount of $10,700.00, secured by a "purchase money mortgage [encumbering a] house & lot" valued at $19,540.00. Johnson checked the pre-printed blocks on Schedule D to indicate he considered the Bank's Loan was "unliquidated" and "disputed." In Schedule B – Personal Property, line 21, Johnson listed "Potential TILA counter-claim v. Peoples Independent Bank," which he valued at $2,125.00. Among the properties claimed as exempt in Schedule C, he included:

> <u>Other Contingent and Unliquidated Claims of Every Nature</u>
> Potential TILA counter-claim v. Peoples Independent Bank.

He again valued the "TILA counter-claim" at $2,125.00 and claimed the entire amount as exempt property. The trustee objected to Johnson's exemptions, on the ground they were excessive (BK Doc.33). This objection was settled, and an agreed order was entered on August 28, 2008 stating "the debtor's lawsuit against listed creditors is exempt only to the extent of $2,125.00 and any amount collected over and above this sum is an asset of the estate." (BK Doc.97).

In his initial chapter 13 plan (it was later amended three times), Johnson proposed to pay $10,700.00 to the Bank on its secured claim, payable in monthly installments of $178.33 each, with no interest.

---

[5] 11 U.S.C. § 101 *et seq*. and herein the "Bankruptcy Code" or "Code." In this Opinion, the term "Section" is a reference to a section, subsection or other division of the Code.

[6] Johnson's petition and original Schedules are included in BK Doc.1. His first proposed chapter 13 plan is BK Doc. 3.

*Proofs of Claim, Amended Schedule A and 1ˢᵗ Amended Plan*

On August 8, 2008, Johnson filed three documents in his bankruptcy case. First, he filed a proof of claim on behalf of the Bank. (Claim #8).[7] The claim was for $10,842.00 plus 6% interest, and the claim stated it was secured by real estate identified as a "house & lot" valued at $17,000.00. Second, he filed an amended Schedule A – Real Property (BK Doc. 53), in which he decreased the value of his house and lot to $17,000.00 and increased the Bank's secured claim to $10,842.00 (the same amounts shown in Claim #8). Finally, Johnson filed a First Amended Chapter 13 Plan (BK Doc. 55 and herein, the "1ˢᵗ Amended Plan"), which increased the Bank's claim and decreased the value of the house and lot to the same amounts shown in Claim #8 and Amended Schedule A. The 1st Amended Plan proposed to increased the Bank's monthly installment to $209.61, and it included 6% interest. Although not filed until August 8, 2008, the 1ˢᵗ Amended Plan was dated, and apparently signed, July 25, 2008. It contained the following provision:

> The claim of [the Bank] (secured by mortgage upon Debtor's residence), whether or not filed pre-Confirmation is subject to, and may be reduced by or as the result of, Debtor's objection & counterclaim for monetary relief arising under [TILA], etc. Debtor's objection and monetary counterclaim survive any expectant or purported preclusive effect of the Confirmation Order. To the extent that Debtor recovers any monetary relief from the objection and counterclaim, Debtor offers any non exempt proceeds to the Trustee.

On August 13, 2008, Johnson filed a Notice of Withdrawal of Claim #8 (BK Doc.61 and herein the, "Withdrawal of Claim"). In his Withdrawal of Claim, Johnson stated Claim #8 was "erroneously filed by the debtor's counsel on behalf of [the Bank]."

Also on August 13, 2008, the Bank filed its own proof of claim (Claim #11) and an Objection

---

[7] On August 11, 2008 the Clerk of Court notified the Bank that, pursuant to Section 501(c) and Rule 3004, a proof of claim had been filed by Johnson on the Bank's behalf. (BK Doc. 60).

4

to Confirmation (BK Doc.62). The Bank's Claim #11 was in the amount of $11,185.66 plus interest at 9%, and the claim stated it was secured by Calhoun County real estate. Attached to the claim was an itemization of the amounts due and copies of the Note and the Mortgage made by Johnson in favor of the Bank. In its Objection to Confirmation, the Bank objected to confirmation of Johnson's "Chapter 13 Plan dated July 25, 2008 [filed August 8. 2008]."

*Complaint and Objection to Claim*

Two days after the Bank filed its own proof of claim, Johnson filed his Complaint and filed an Objection to the Bank's Claim #11. (BK Doc.69 and herein, the "Objection to Claim"). The Complaint alleged the Bank violated TILA by failing to (1) properly disclose that a security interest had been taken in the property purchased with the Loan proceeds as required by TILA § 1638(a)(9) and Reg. Z § 226.18(m); (2) disclose whether filing fees of $41.85 were included in the Amount Financed; and (3) make the required TILA disclosures prior to consummation of the contract in violation of TILA § 1638(b) and Reg. Z § 226.17(b). In the Objection to Claim, Johnson simply stated he had filed the Complaint, which was incorporated by reference.

*Plan Confirmation*

On August 15, 2008, Johnson filed his second amended plan (Bk Doc.71 and herein, the "Second Amended Plan"). The Second Amended Plan increased the Bank's debt to $11,185.66 (the amount of Bank's Claim #11), increased the interest rate to 8%, and increased the Bank's monthly installments to $233.17. The Second Amended Plan contained the following provision, which was similar to the provision inserted in the 1st Amended Plan:

> Treatment of the claim of Peoples Bank is subject to, and may be reduced by
> or as the result of, Debtor's pending objection & counterclaim filed for monetary

5

Case 08-40071-JJR   Doc 8    Filed 12/03/08   Entered 12/03/08 15:06:19    Desc Main
Document      Page 5 of 13

relief arising under the Truth in Lending Act. Debtor's objection and counterclaim survive any expectant or purported preclusive effect of the Confirmation Order. To the extent that Debtor recovers any monetary relief from the objection and counterclaim, Debtor offers any non exempt proceeds to to [sic] the Trustee.

Johnson again amended his plan on August 27, 2008 (Bk Doc.94 and herein, the "Final Plan"); however, no change was made to the proposed payment or treatment of the Bank's claim, and the Final Plan included the same statement with regard to Johnson's TILA counterclaims against the Bank.

On August 29, 2008, Johnson and the Bank filed a Joint Stipulation for Withdrawal of Objection to Confirmation (BK Doc.98 and herein, the "Stipulation"). In the Stipulation, the parties agreed the Bank's Objection to Confirmation was withdrawn and this adversary proceeding would survive confirmation. Other than allowing the Final Plan to proceed to confirmation, the Stipulation was not a capitulation by the Bank. Rather, the Bank confirmed, it "disputes Debtor's entitlement to monetary or other relief."

POSITIONS OF THE PARTIES AND CONCLUSIONS OF LAW:

The Loan from the Bank to Johnson was made on August 27, 2003, almost five years before the Complaint was filed. TILA § 1640(e) requires actions based on disclosure violations to be commenced "within one year from the date of the occurrence of the violation." In this case, any violation occurred on the date the credit transaction between Johnson and the Bank was consummated, i.e. August 27, 2003, the date the Loan was closed. 12 C.F.R. § 226.2(a)(13); *Jones v. Regional Acceptance Corp.* (*In re Jones*) 2008 WL 4830538, *8 (Bankr. N.D. Ala. November 4, 2008).

In 1980, TILA § 1640(e) was amended effective October 1, 1982.[8] The amendment provided, "This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of *defense* by recoupment or set-off in such action, except as otherwise provided by State law." (emphasis added). The Bank argues Johnson's TILA claims are still barred by the one-year statute of limitations because the claims were not asserted defensively by way of recoupment, but rather are asserted as the main or original action. The Bank emphasizes Johnson's bankruptcy schedules (1) described the Loan as "unliquidated" and "disputed," (2) valued the "TILA counter-claim" at $2,125.00, and (3) proposed to retain the anticipated damages from the counterclaim as exempt property.

The Complaint seeks "[r]elief in recoupment to the proof of claim filed by [the Bank]," "actual and statutory damages in recoupment," and an "[a]ward [of] statutory damages, in recoupment." (Complaint ¶'s A, B, e). Accordingly, Johnson argues his claims fall squarely within the amendment to TILA § 1640(e), which allows TILA claims to be asserted defensively as a recoupment after the one-year statute of limitations has expired.

Although the Complaint identified the TILA claims as a recoupment, the Court must determine whether those claims in fact are being pursued defensively. If not, and procedurally Johnson can accurately be described as having initiated the main action, then his claims are not defensive and are time-barred. *Smith v. American Financial Systems, Inc.* (*In re Smith*), 737 F.2d 1549, 1554 (11th Cir. 1984); *Sallings v. Gen. Motors Acceptance Corp.*, (*In re Sallings*), 357 B.R. 646 (Bankr. N.D. Ala. 2007), *aff'd In re Sallings*, 2008 WL 4831636 (N.D. Ala. Oct. 8, 2008).

---

[8] Pub. L. No. 96-221, 94 Stat.132. §§ 615 (a)(4), 625 (*amended* 1980).

In *Smith*, the Eleventh Circuit was faced with the same statute of limitations issue presented in this case, except the TILA claims in *Smith* pre-dated the 1980 amendment to § 1640(e), which codified the right to assert time-barred TILA claims defensively. The Eleventh Circuit recognized that even before the amendment was effective, courts were divided on whether time-barred TILA claims could be asserted defensively as a recoupment. Before deciding whether it would follow the courts that allowed time-barred TILA claims to be raised defensively, the Eleventh Circuit chose to first determine if the debtor was in fact asserting her TILA claims as a defense under a recoupment theory. The Eleventh Circuit set out the three requirements for time-barred TILA claims to be raised defensively as a recoupment: "(1) the TILA violation and the creditor's debt claim arose from the same transaction, (2) she [the debtor] is asserting her claim as a *defense*, and (3) the 'main action' is timely. All three requirements must be satisfied." *Id*. at 1553 (emphasis in original).

The facts in *Smith* are instructive. One month after filing her chapter 13 petition, the debtor sent a rescission notice to the secured creditor holding a mortgage on her residence, seeking to rescind the mortgage loan transaction because of a TILA violation. The creditor did not reply to the notice. Thereafter, the debtor scheduled the secured debt as a "disputed claim" and asserted she was entitled to rescission and statutory damages. According to the Eleventh Circuit, the creditor "counterclaimed for the amount of the debt" . . . . and "[the debtor] filed a 'counterclaim' to [the creditor's] counterclaim seeking 'recoupment' of monetary damages for violations of TILA from any judgment that might be awarded to [the creditor] on the debt." *Id.* at 1551. There is no indication in *Smith* that the debtor filed a formal objection to the creditor's secured claim, other than scheduling it as disputed or commenced an adversary proceeding against the creditor. It appears the Eleventh Circuit considered the debtor's acts of (1) scheduling the secured claim as disputed, (2) sending the

8

rescission notice, and (3) asserting (apparently in her bankruptcy schedules) she was entitled to rescission and statutory damages, were sufficient adversarial events to label the debtor as the party who initiated the main action and that her claims were not raised defensively under a theory of recoupment. *Id.* at 1553-54. The Eleventh Circuit concluded that because the main action was commenced after the lapse of the statute of limitations, the debtor's action for TILA violations was stale. *Id* at 1554.

Likewise, the procedural history of the instant case identifies who is the *bona fide* instigator of the main action. First, it is import to recognize when Johnson filed his bankruptcy petition, his TILA claim was time-barred and could not be asserted as a primary or main cause of action. The Bank had not commenced any action to collect the Loan, so the TILA claims could not be asserted defensively; there was no action to defend.[9] Nonetheless, on Schedule D Johnson designated the

---

[9] Even if Johnson's TILA claim was not time-barred, TILA § 1640(h) prohibited him from deducting anticipated damages for TILA violation from the Bank's Loan before a court had determined the Bank's liability. TILA § 1640(h) states:

> A person may not take any action to offset any amount for which a creditor or assignee is potentially liable to such person under subsection (a)(2) of this section against any amount owed by such person, unless the amount of the creditor's or assignee's liability under this subchapter has been determined by judgment of a court of competent jurisdiction in an action of which such person was a party. This subsection does not bar a consumer then in default on the obligation from asserting a violation of this subchapter as an original action, or as a defense or counterclaim to an action to collect amounts owed by the consumer brought by a person liable under this subchapter.

The plain meaning of the first sentence of § 1640(h) prohibits a consumer from unilaterally reducing the amount he owes by the damages due from his creditor for a TILA violation until a court has determined the amount of the creditor's liability. The second sentence of § 1640(h) confirms a consumer is not prohibited from asserting a TILA claim in his original action, or as a defense or counterclaim in a action commenced by a creditor, even though the consumer's indebtness is then in default. In other words, the consumer's default cannot be raised as a defense by the creditor who is being sued under TILA in the consumer's original action or in a

9

indebtedness owing to the Bank as unliquidated and disputed. The obvious basis for such a designation was the stale TILA claim Johnson could assert only defensively when and if the Bank filed a claim in the bankruptcy case.[10] Moreover, on Schedules B and C, Johnson valued his "Potential TILA counter-claim v. Peoples Independent Bank" at $2,125.00 and claimed the entire amount as exempt property. Johnson had no counterclaim that could be liquidated and realized as cash or other property. At best, he had a possible defense against an unfiled claim, a defense that might reduce the amount due to the Bank but could not put money in his or the trustee's pocket.

Finally, and this might be the most telling factor in determining who commenced the main action in this adversary proceeding, on August 8, 2008 Johnson filed a proof of claim on behalf of the Bank. Rule 3004 and Section 501(c) allow a debtor to file a proof of claim on behalf of a creditor, but only after the creditor fails to timely file its own proof of claim. The claims bar date in a chapter 13 case is 90 days after the first date set for the meeting of creditors under Section 341(a). Rule 3002(c). The Section 341(a) meeting in this case was first scheduled for July 16, 2008; so the bar date was October 14, 2008. Nonetheless, Johnson filed a claim for the Bank over two months before the deadline for the Bank filing its own claim. The claim filed by Johnson on the Bank's behalf was for $10,842.00 plus 6% interest. The claim later filed by the Bank on its own behalf was for $11,185.66 plus 9% interest, the rate of interest stated in the Note.[11] If the Bank had

---

counterclaim.

[10] Filing a claim in a bankruptcy case is tantamount to commencing a civil action to collect a debt. *Cooley v. Wells Fargo Financial (In re Cooley)*, 362 B.R. 514 (Bankr. N.D. Ala. 2007), *citing Coxson v. Commonwealth Mortgage Co. Of Am., L.P. (In re Coxson),* 43 F.3d 189, 194 (5th Cir. 1995).

[11] The nominal interest rate was 9%, and the TILA APR was disclosed at 9.326%.

10

not filed its own proof of claim, payment and treatment of the Loan would have been based on the provisional claim filed by Johnson: a claim for a lesser amount and lower rate of interest.[12] Moreover, after filing a claim on the Bank's behalf, Johnson filed his 1st Amended Plan. As stated above, the 1st Amended Plan provided, "To the extent that Debtor recovers any monetary relief from the objection and counterclaim [to the Bank's claim], Debtor offers any non exempt proceeds to to [sic] the Trustee." Recoupment raised as a defense cannot possibly result in monetary relief which, after a debtor retains his exempt share, might leave an excess for the trustee to distribute to creditors.

Admitting he erroneously filed a claim on behalf of the Bank, Johnson filed the Withdrawal of Claim. (BK Doc. 61). However, only a creditor, not a debtor, may withdraw a claim. Rule 3006 ("A *creditor* may withdraw a claim as of right by filing a notice of withdrawal . . . ." emphasis added); *In re Melton*, 194 B.R. 418, 419 (Bankr. E.D. Tex. 1996) ("Although Rule 3004 allows a Debtor to file a claim on behalf of a creditor, there is no corresponding provision in Rule 3006 which would allow the Debtor to withdraw that claim once it has been filed."); *In re Hutchins*, 162 B.R. 1014, 1021 (Bankr. N.D. Ill. 1994) ("While a creditor is allowed to withdraw a claim it has filed, no provision of the bankruptcy code allows a debtor to withdraw a claim filed by that debtor on behalf of a creditor."). Courts, including this one, have held filing a bankruptcy claim by a creditor is tantamount to filing a civil action against a debtor for collection of a debt.[13] Accordingly, a good argument can be made that filing a claim by a debtor on behalf of a creditor, especially a claim for less than the full amount due, coupled with an assertion that the claim is subject to a monetary

---

[12] *See In re Hamilton,* 179 B.R. 749 (Bankr. S.D. Ga. 1995); *see also* Rule 3021, "distribution shall be made to creditors whose claims have been allowed."

[13] *See supra* note 10.

counterclaim, is tantamount to a civil action against the creditor for affirmative relief, or in terms used by the Eleventh Circuit in its *Smith* opinion, is tantamount to commencing the "main action."

In *Smith* the Eleventh Circuit concluded:

> That Smith's suit is one for affirmative relief is exemplified by the procedural posture of this case. Smith haled AFS [the creditor] into court seeking monetary damages and rescission. Only then did AFS assert its claim on the underlying obligation. Smith is now attempting to assert her time-barred affirmative claim as a counterclaim; this change of labels does not effect a change in the essential character of the action. Because Smith's claim is not asserted as a defense to or denial of the creditor's claim, it cannot be classified as a recoupment.
>
> The procedural posture of the case points out an additional flaw in Smith's contention that her TILA cause of action is a recoupment not subject to the statute of limitations. [*Bull v. United States*, 295 U.S. 247 (1937)] . . . requires that the "main action", that is, the *plaintiff's* action, be timely. *Bull*, 295 U.S. at 262 . . . . This requirement is based on the premise that, if the litigation is not stale, no issue raised by the litigation is stale. Accordingly, the statute of limitation aimed at precluding stale litigation will not cut off consideration of a defense to the action. In this case, however, the "main action" was the action initiated by Smith as the original plaintiff in this case. This action is stale, and therefore Smith's counterclaim cannot be classified as a recoupment. (citations omitted).

737 F.2d at 1554.

In the instant case, Johnson commenced his bankruptcy case by scheduling the Bank's Loan as disputed and unliquidated, and he sought an exemption for monetary damages of $2,125.00, which he intended to recover from the Bank for TILA violations. As stated above, recoupment defenses do not give rise to monetary recoveries in which a debtor may claim an exemption and pass along the excess to the trustee. Thereafter, Johnson filed a premature and diluted proof of claim on behalf of the Bank which procedurally he could not withdraw.[14] In his 1st Amended Plan and the

---

[14] The Mortgage encumbered Johnson's principal residence. The claim he filed on the Bank's behalf and his 1st Amended Plan proposed to pay the Bank less than the full amount of the Loan at a lesser interest rate than that provided in the Note. Section 1322(b)(2) prohibits a debtor from modifying "a claim secured only by a security interest in real property that is the

two subsequent amended plans, Johnson stated in no uncertain terms the Bank's Loan was subject to a monetary counterclaim. Understandably, under these circumstances the Bank felt compelled to respond by filing its own proof of claim.[15] By then, Johnson was well on his way in his pursuit of the main action: an action based on a five-year old TILA violation. The Court concludes the procedural posture of this adversary proceeding unquestionably places Johnson in the role of the party who commenced the main action. Because the main action is barred by the one-year statute of limitations, the Bank's Motion to Dismiss is due to be granted.

Pursuant to Rule 9021, a separate Order will be entered in conformity with this Opinion.


Dated: December 3, 2008

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

debtor's principal residence."

[15] Secured creditors are not required to file proofs of claim. *See Universal Am. Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 827 (11th Cir. 2003) ("An unsecured creditor is required to file a proof of claim for its claim to be allowed, but filing is not mandatory for a secured creditor."); *Relihan v. Exchange Bank*, 69 B.R. 122 (S.D. Ga. 1985) (secured creditor did not lose its lien as a result of failure to file proof of claim); *In re Stewart*, 247 B.R. 515 (Bankr. M.D. Fla. 2000) (generally accepted that a secured creditor is not required to file a proof of claim).

Case 08-40071-JJR    Doc 8    Filed 12/03/08    Entered 12/03/08 15:06:19    Desc Main
Document    Page 13 of 13